1

2

3

4                              UNITED STATES DISTRICT COURT

5                            NORTHERN DISTRICT OF CALIFORNIA

6

7   E.M.,[1] et al.,                          Case No. 24-cv-07397-NW

8                   Plaintiffs,
                                              **ORDER GRANTING MOTIONS TO**
9           v.                                **DISMISS**

10  CALIFORNIA DEPARTMENT OF                   Re: ECF No. 22, 27, 36, 47
    EDUCATION, et al.,
11
                    Defendants.
12

13          Before the Court are motions to dismiss filed by University Preparatory Academy

14  ("UPA"), David Porter, Rachel Juliano, Alisha Hill, and Lucas Kelleher ("UPA Individual

15  Defendants") (collectively "the UPA Defendants"), ECF No. 27; the California Department of

16  Education ("CDE") and State Superintendent of Public Instruction Tony Thurmond in his

17  individual capacity (collectively "the State Defendants"), ECF No. 22; Santa Clara County Office

18  of Education ("SCCOE") and Santa Clara County Board of Education ("SCCBOE") (collectively

19  "the Santa Clara Defendants"), ECF No. 36; and Dr. Mary Ann Dewan, ECF No. 47. Having duly

20  considered the parties' written submissions, the Court GRANTS the motions and DISMISSES the

21  complaint with partial leave to amend.

22

23

24

25

26

27  [1] Rule 5.2(a)(3) of the Federal Rules of Civil Procedure requires minors to be identified by initials
    in court filings. Although Plaintiffs' complaint identifies the minor child at the center of this case
28  by her full name, the Court's order references her by her initials. Future filings made by any party
    should do likewise as required under the rule.

United States District Court
Northern District of California

# I. BACKGROUND

## A. Factual History[2]

In the fall of 2023, E.M. began seventh grade at a new school, University Preparatory Academy in Santa Clara. Compl. ¶¶ 36, 37. Because UPA is a charter school, it is overseen by SCCOE through its Charter Schools Department, though CDE is ultimately responsible for the school. *Id.* ¶ 24. E.M. has many close family members that live in Israel and speaks Hebrew when she is at her home in San Jose. *Id.* ¶ 5. She identifies as Jewish and Israeli-American. *Id.* ¶¶ 5, 38.

On Saturday, October 7, 2023, Hamas attacked Israel, leading to significant violence and civilian casualties. *Id.* ¶¶ 41-52. In the wake of the attack, the complaint alleges that E.M. experienced a hostile environment at school. *See generally id.* ¶¶ 53-73. Among other incidents, E.M. experienced the following episodes of harassment:

- On October 9, E.M.'s history teacher forced her to read a passage about past peaceful relations between Palestinians and Jews, which was humiliating for her, even though E.M. was visibly upset and asked to be excused to "get control of herself." *Id.* ¶ 54.

- On October 10, two Muslim classmates confronted E.M., accusing Jews of being terrorists and claiming her family lived on stolen land. *Id.* ¶ 55. Later that week, those same girls showed E.M. a threatening Instagram post and spread rumors that "White [E.M.]'s family are terrorists." *Id.* ¶ 57.

- On October 16, two different classmates began chasing E.M. around the school when they heard her speaking Hebrew on a phone call while yelling "[w]e want you to die." *Id.* ¶ 59.

- On October 18, E.M.'s two Muslim classmates accused E.M. of being a terrorist. *Id.* ¶ 61.

- On November 13, some of E.M.'s classmates refused to call her by name and instead began addressing her simply as "Jew." *Id.* ¶ 65.

- On December 5, E.M.'s two Muslim classmates learned that someone had "snitched" on them and indicated they would injure whoever that person was. *Id.* ¶ 70.

---

[2] All allegations are taken from the complaint and assumed to be true for the purposes of this opinion.

During this period of harassment, E.M. was afraid for her safety. *Id.* ¶ 73. Within a week of the October 7 attack, E.M.'s social circle diminished significantly, and she was subjected to rumors and derogatory comments that went on for months. *Id.* ¶¶ 56-73.

After the first week of harassment, E.M.'s parents attempted to discuss E.M.'s issues with school administrators. *Id.* ¶ 58. Over the following months, E.M.'s parents met with UPA Dean of Student Services Dr. Alisha Hill, Executive Director David Porter, seventh grade counselor Rachel Juliano, and Director of Student Services Lucas Kellher. *Id.* ¶¶ 58, 60-63, 66-69, 72. Though the family provided resources to combat antisemitism, the school did not implement any measures or take any action against the harassment aimed at Jewish or Israeli students. *Id.* ¶¶ 63, 67-72. Ultimately, the family decided to withdraw E.M. from UPA after the holiday break, citing ongoing fear for her safety and lack of support from the school. *Id.* ¶ 74. As a result of the harassment and the school's inaction, E.M. and her family experienced significant emotional distress. *Id.* ¶ 107.

Following E.M.'s withdrawal from UPA, she attended a public meeting of the SCCBOE and SCCOE to speak in opposition to a resolution blaming Israel for the conflict in Gaza disguised as a resolution promoting "peace and safety" for children. *Id.* ¶ 83. E.M. was the only public-school student to speak to the Board with actual experience concerning the toxic antisemitic and anti-Zionist atmosphere at a school within the County's jurisdiction. *Id.* ¶ 88. Defendants Mary Ann Dewan and Jessica Bonduris worked for the SCCOE and served as the Santa Clara County Superintendent and Associate Superintendent respectively. *Id.* ¶ 28-29.

On January 22, E.M.'s mother submitted a formal Uniform Complaint Procedures ("UCP") complaint with SCCOE, explaining that both she and E.M. had spoken at the recent School Board meeting about the issues they were facing. *Id.* ¶ 91. Though SCCOE policy required the district to resolve the UCP complaint within 60 days, SCCOE's response took 113 days and only then after a spokesperson for the Bay Area Jewish Committee reached out to SCCOE superintendent Mary Ann Dewan directly. *Id.* ¶ 92-94. In their response, SCCOE insisted that the complaint was not within the scope of their oversight over UPA and suggested E.M.'s parents reach out to CDE, which they did on June 5. *Id.* ¶¶ 93, 95. On June 10, the CDE referred the complaint to UPA's

3

1   Executive Director Porter and asked for a response by July 13; Porter never responded and CDE

2   never followed up. *Id.* ¶¶ 95-96.

3          As alleged in the complaint, the CDE, SCCOE, and SCCBOE all failed to take any action

4   against the harassment aimed at Jewish or Israeli students and never attempted to address possible

5   tension or safety concerns of such students in the aftermath of October 7. *Id.* ¶ 75-78.  The school

6   itself failed to address either the harassment experienced by E.M. and her family, or to promote

7   any healthy and respectful way of dealing with the Gaza-Israel conflict at school. *Id.* ¶ 78.

8       **B.**      **Procedural History**

9          E.M. filed the instant complaint on October 23, 2024 alleging sixteen causes of action

10   against different combinations of Defendants.  The Court has attempted to identify Plaintiff's

11   claims and the Defendants associated with those claims, in the table appended to this order.  All

12   Defendants except Bonduris filed motions to dismiss.[3]  *See* ECF Nos. 22, 27, 36, & 47.

13   **II.**    **LEGAL STANDARD**

14       **A.**      **Motion to Dismiss**

15          To survive a motion to dismiss, a complaint must contain at minimum "a short and plain

16   statement of the claim showing that the pleader is entitled to relief" and "a demand for the relief

17   sought." Fed. R. Civ. P. 8.  The complaint must clearly establish the claims and parties such that a

18   defendant would have "no difficulty in responding to the claims with an answer and/or with a Rule

19   12(b)(6) motion to dismiss." *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1131–32

20   (9th Cir. 2008).

21          Federal Rule of Civil Procedure 12(b)(6) is designed to "test[ ] the legal sufficiency of a

22   claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A dismissal under Rule 12(b)(6) for

23   failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2)

24   insufficient facts to support a cognizable legal claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d

25   696, 699 (9th Cir. 1990).  When analyzing a complaint under Rule 12(b)(6), the well-pled factual

26

27   ───────────────────

28   [3] The Court reminds the parties that Court ordered deadlines and briefing schedules may only be
    amended by leave of the Court.  Barring exigent circumstances, the parties are expected to file
    their papers on time, consistent with the Court's standing order.

United States District Court
Northern District of California

allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009), and therefore are insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010).

## III.    DISCUSSION

### A.    Plaintiffs Currently Lack Standing to Bring Suit

All three Plaintiffs in this suit fail to sufficiently allege that they have the requisite standing to sustain this action. "In the absence of standing, a federal court lacks subject matter jurisdiction over the suit." *Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1172 (9th Cir. 2013) (quotations omitted). Plaintiffs must ameliorate the issues addressed om this Order if they choose to bring an amended complaint.

#### 1.    Elisa Schweizer and Shai Miller

To establish Article III standing to sue, "a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *Food and Drug Admin. v. All. for Hippocratic Medicine*, 602 U.S. 367, 380 (2024). An injury in fact must be "concrete, particularized, and actual or imminent." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "[P]laintiffs must demonstrate standing for each claim that they press against each defendant, and for each form of relief that they seek." *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (internal quotation marks omitted).

Because the complaint is silent as to whether certain Plaintiffs bring only a subset of claims, the Court assumes that E.M.'s parents allege each claim on behalf of themselves and their own injuries. But, even assuming E.M.'s parents can sufficiently allege any personal injury attributable to Defendants, many of the complaint's claims preclude parental injury as a matter of law. *See, e.g.*, *Posey v. San Francisco Unified Sch. Dist.*, No. 23-CV-02626-JSC, 2023 WL 8420895, at *2 (N.D. Cal. Dec. 4, 2023) ("As a threshold matter, Parent Plaintiffs cannot bring a Title VI [claim] because Parent Plaintiffs are not the intended beneficiaries of public schooling.");

United States District Court
Northern District of California

*Glass v. Hillsboro School Dist. 1J*, 142 F.Supp.2d 1286 (D. Or. 2001) (parents not injured where claim for negligence related to child's discrimination at school).

As to the remaining claims, E.M.'s parents fail to allege an injury in fact that is concrete or particularized. In every cause of action, there is only a single vague and conclusory injury alleged: "significant emotional distress as well as the financial obligations attendant upon putting E.M. in private school." *See, e.g.*, Compl. ¶ 126, 129. "A conclusory allegation of emotional distress, without more, is insufficient to state a claim." *Obot v. Wells Fargo Bank, N.A.*, No. C11-00566 HRL, 2011 WL 5243773, at *3 (N.D. Cal. Nov. 2, 2011). Likewise, "while economic detriment and loss of opportunity can be legally cognizable harms, Plaintiffs' generalized and cursory descriptions of these harms do not sufficiently set out a concrete injury." *Physicians Comm. for Responsible Med. v. Vilsack*, No. 21-CV-03088-RS, 2023 WL 1873084, at *8 (N.D. Cal. Feb. 9, 2023) (internal citation omitted).

### 2.    E.M.

"A minor . . . who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem." Fed. R. Civ. P. 17(c)(2). The court "must appoint a guardian ad litem - or issue another appropriate order - to protect a minor or incompetent person who is" otherwise unrepresented. *Id*. District courts have "a special duty to safeguard the interests of minor plaintiffs." *See Robidoux v. Rosengren*, 638 F.3d 1177, 1179 (9th Cir. 2011).

E.M. is a minor and may only bring suit if a guardian ad litem has been appointed to represent her interests. *See* Cal. Fam. Code § 6502. No adult has petitioned the Court to serve as E.M.'s guardian ad litem, though it appears E.M.'s parents may intend to seek that role. *See* Pls' Opp'n to CDE & UPA Mots., ECF No. 31 at 2 n.1. While "natural bonds of affection" generally "lead parents to act in the best interests of their children," the Court must consider whether the interests of a minor plaintiff and potential guardian ad litem diverge, even if that potential guardian ad litem is a parent. *Troxel v. Granville*, 530 U.S. 57 (2000); Cal. Civ. Proc. Code § 372(b)(1). The general practice in the Northern District is to require a petition for appointment of a guardian ad litem to ensure both the minor's interests are being met, and to ensure that there is

1    not a conflict between the minor and the guardian ad litem.  Until a guardian ad litem has been

2    appointed for E.M. in this matter, the Court cannot adjudicate E.M.'s claims.

3    **B.    Overarching Complaint Deficiencies**

4        As currently drafted, Plaintiffs' complaint has a fatal flaw: it fails to make a "short and

5    plain statement of the claim[s] showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).

6    Though Plaintiffs filed a 55-page complaint, Plaintiffs never sufficiently identify ***how*** the specific

7    Defendants violated the various laws underpinning Plaintiffs' claims.  A successful complaint is

8    clear as to which counts are brought against which Defendants, the elements of those counts, and

9    how each of those Defendants meets those elements.  Plaintiffs fail to provide the relevant and

10   applicable standards of proof for many of their claims, and where they do, they struggle to apply

11   those standards to their own allegations.

12       For example, three of plaintiffs sixteen counts are brought under 42 U.S.C. § 1983.  To

13   establish a § 1983 claim, a plaintiff must show that the defendants, acting under color of state law,

14   discriminated against the plaintiff as a member of an identifiable class and that the discrimination

15   was intentional" or resulted from deliberate indifference.  *Flores v. Morgan Hill Unified Sch.*

16   *Dist.*, 324 F.3d 1130, 1134–35 (9th Cir. 2003).  "As an initial matter, section 1983 plainly requires

17   that there be an actual connection or link between the actions of the defendants and the deprivation

18   alleged to have been suffered by [p]laintiff."  *Thomas v. Fresno City Coll.*, No. 115-CV-00826-

19   DAD-BAM, 2016 WL 1572739, at *5 (E.D. Cal. Apr. 19, 2016) (citing *Monell v. Dep't of Soc.*

20   *Servs.*, 436 U.S. 658 (1978)).  In other words, plaintiff must allege that a "deliberate or affirmative

21   act or omission of the defendant caused the deprivation of plaintiff's constitutional rights."

22   *Stevenson v. Koskey,* 877 F.2d 1435, 1439 (9th Cir. 1989).  Nevertheless, here Plaintiffs allege

23   certain Defendants acted with "deliberate indifference" without providing any of the context

24   provided above to root their allegations in the law.

25       All three § 1983 claims—which allege the deprivation of rights under the Equal Protection

26   Clause (Count II), the Free Exercise Clause (Count VI), and E.M.'s right to free speech (Count

27   IV)—are brought against Dewan and Bonduris (among others), plus Thurmond for Count II.  But

28   E.M. withdrew from school in January 2024 before Dewan, Bonduris, or Thurmond learned of

E.M. and her complaints, preluding any possibility that Dewan, Bonduris, or Thurmond caused the deprivation of rights that prompted her to leave UPA. Moreover, Plaintiffs' allegations are insufficiently vague and conclusory. Bonduris and Thurmond are never mentioned in the body of facts provided in the complaint, and Dewan is mentioned only once in passing. Further, the Court will not consider conclusory allegations that are repeated, to the word, from one count to another, without particular facts that are associated with the alleged conduct and liability of individual defendants. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)

The absence of specific allegations directly linking each Defendant to Plaintiffs' injuries undermines Plaintiffs' complaint. Though portions of the complaint are detailed (particularly regarding the events that were occurring outside the United States), the specifics are primarily limited to E.M., her troubling experiences with her classmates, the relevant political climate that inspired the alleged bullying, and her parents efforts to intervene on E.M.'s behalf. Without question, some of this context is necessary, and it demonstrates the depth of concern and anguish that E.M.'s parents felt in the face of E.M.'s bullying. These, however, are not the details that can sustain an action brought against school administrators and government agencies, even if they give color as to why Plaintiffs interacted with Defendants in the first place. Any amended complaint must allege with specificity what actions (or lack of action) each Defendant took, how those particular actions caused each Plaintiff's alleged injuries, and the legal basis that gives rise to a remedy for each Plaintiffs' harm. The remedy requested must bear a relationship to Plaintiffs' injuries, and it should be clear why each Defendant is responsible for the remedy requested by Plaintiffs.

### C.    Specific Complaint Deficiencies

Of Plaintiff's sixteen causes of action, four of them are incompatible with the facts Plaintiffs allege. Likewise, several other causes of action are incompatible as brought against specific defendants. In other words, Plaintiffs cannot amend their complaint to cure these incompatibilities without fundamentally altering the story that the complaint alleges.

### 1.    Count X:  Cal. Gov. Code § 11135

Plaintiffs' claim under California Government Code § 11135 fails because Plaintiffs do not request equitable relief.  Cal. Gov't Code § 11135; *id.* § 11139 (claim under § 11135 can only be enforced through "a civil action for equitable relief.").  "[W]hile the statutory scheme that includes section 11135 creates a private right of action, it does not contemplate an action for damages." *Steshenko v. Foothill-de Anza Cmty. Coll. Dist.*, No. H049871, 2023 WL 4753441, at \*9 (Cal. Ct. App. July 26, 2023).  Because E.M. has already withdrawn from UPA, Plaintiffs cannot demonstrate any future harm that injunctive relief might redress.  *See Muhmoud v. City of San Jose*, No. 20-CV-08808-EJD, 2024 WL 2883509, at \*5 (N.D. Cal. June 6, 2024) ("Without any allegations of continuing, present adverse effects, Plaintiff lacks standing to pursue equitable relief.").  Accordingly, this claim is DISMISSED WITH PREJUDICE as to all Defendants.

### 2.    Count XI:  Cal. Civil Code § 51, Unruh Civil Rights Act

Count XI fails because public schools, their employees, and government actors are not covered by the Unruh Act.  The statute entitles "[a]ll persons within the jurisdiction of this state[,] . . . no matter what their . . . race, color, religion, ancestry, national origin[,] . . . are entitled to the full and equal accommodations . . . in all ***business establishments*** of every kind whatsoever."  Cal. Civ. Code § 51(b) (emphasis added).  Public schools are not business establishments for the purposes of the Unruh Act when they are "acting to fulfill their educational role." *Brennon B. v. Super. Ct.*, 13 Cal. 5th 662, 675 (2022).  This is so because "[t]he task of educating students does not involve regularly conducting business transactions with the public, or receiving 'financial benefits from regular business transactions;' nor does it involve 'operating in a capacity that is the functional equivalent of a commercial enterprise.'" *Id.* (quoting *Warfield*, 10 Cal. 4th at 621). UPA, like all charter schools in California, is legally a public school. *N.F. by & through Flyte v. Antioch Unified Sch. Dist.*, No. 21-16260, 2022 WL 1125645, at \*1 (9th Cir. Apr. 15, 2022). Accordingly, Count XI is DISMISSED WITH PREJUDICE as to all Defendants.

### 3.    Count XII:  Cal. Civil Code § 51.7, Ralph Civil Rights Act of 1976

Count XII fails because Plaintiffs do not allege that Defendants acted (or threatened to act) with violence against E.M., even if her classmates may have, so the Ralph Civil Rights Act is not

applicable.  The act, "provides that all persons within California have the right to be free from any

violence, or intimidation by threat of violence, committed against the person on account of race."

*Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1167 (N.D. Cal. 2009), *amended in part*, No. C 05-

02935 MEJ, 2009 WL 10736653 (N.D. Cal. Sept. 8, 2009) (citing Cal. Civ. Code § 51.7(a)).  The

elements of a Ralph Act claim are: "(1) the defendant threatened or committed violent acts against the

plaintiff; (2) the defendant was motivated by his perception of plaintiff's race; (3) the plaintiff was

harmed; and (4) the defendant's conduct was a substantial factor in causing the plaintiff's harm." *Id.*

(citing *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 880–81 (2007)).

Defendants, all school administrators, institutions, or their supervising bodies, did not

threaten or commit violent acts against E.M. or her parents.  It is not sufficient to merely allege

that Defendants perpetuated an "atmosphere of intimidation with threats of violence." *See* Pls'

Opp'n to CDE & UPA Mots.  Plaintiffs cited cases on this point are inapposite or inapt. *See*

*Gabrielle A. v. Cnty. of Orange*, 10 Cal. App. 5th 1268, 1291 (2017), as modified (Apr. 18, 2017)

(plaintiffs failed to allege a violent act where defendants had merely "conspired" against them);

*Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1289-1290 (9th Cir. 2001)

(plaintiffs alleged a violation where defendant company employed both plaintiff and violent co-

worker for three years).  Accordingly, Count XII is DISMISSED WITH PREJUDICE as to all

Defendants.

### 4.    Count XIII:  Cal. Civil Code § 52.1, Tom Bane Civil Rights Act

Count XIII fails for similar reasons.  "The California Bane Act creates a cause of action against

a person if that person 'interferes by threat, intimidation, or coercion . . . with the exercise or enjoyment

by any individual or individuals of rights secured by the Constitution or laws of the United States.' "

*Sandoval v. County of Sonoma*, 912 F.3d 509, 519 (9th Cir. 2018) (citing Cal. Civ. Code § 52.1).

In order to state a claim under the Bane Act, Plaintiffs must allege "(1) interference with or

attempted interference with a state or federal constitutional or legal right, and [that] (2) the

interference or attempted interference was by threats, intimidation, or coercion." *Hernandez v.

City of San Jose*, 241 F. Supp. 3d 959, 980–81 (N.D. Cal. 2017), *aff'd in part, dismissed in part,*

897 F.3d 1125 (9th Cir. 2018) (quoting *Allen v. City of Sacramento*, 234 Cal.App.4th 41, 67

(2015)). "Threats, intimidation, and coercion all involve affirmative acts."

Plaintiffs' allegations are predicated on the Defendants' failure to act, not any affirmative

act. Since Plaintiffs allege only that Defendants failed to act rather than a specific act to deprive

E.M. of her or her parents' constitutional rights, they certainly do not allege that Defendants did so

through "threats, intimidation, or coercion." Accordingly, Count XIII is DISMISSED WITH

PREJUDICE as to all Defendants.

### 5.    Claims Inapplicable to Certain Defendants

#### a.    California Department of Education – State Law and Common Law Claims

Plaintiffs' state law claims against CDE are not viable. Pursuant to the Eleventh

Amendment to the Constitution, "[t]he Judicial power of the United States shall not be construed

to extend to any suit in law or equity, commenced or prosecuted against one of the United States

by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend.

XI. "Longstanding Supreme Court precedent has interpreted this Amendment to immunize states

from suit in federal court by citizens and noncitizens alike." *Kohn v. State Bar of Cal.*, 87 F.4th

1021, 1025 (9th Cir. 2023) (en banc) (citations omitted). The protections of the Amendment

extend to state agencies like CDE and cover all but a limited set of federal and state claims. [4] *See*

*id.* at 1026; *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). As a result, the

Court DISMISSES Plaintiffs' state law claims against CDE WITHOUT LEAVE TO AMEND.

For a similar reason, the Court dismisses the negligence claim (Count XVI) as brought

against CDE. *See* Compl. ¶ 233. Negligence is a common law tort, and California law is clear

that public entities are "not liable for an injury," "[e]xcept as otherwise provided by statute." Cal.

Gov't Code § 815; *Nozzi v. Hous. Auth. of City of Los Angeles*, 806 F.3d 1178, 1200 (9th Cir.

2015) ("California has abolished common law tort liability for public entities."). Because Plaintiff

---

[4] One exception is when Congress abrogates state sovereign immunity for claims brought under a specific statute. 42 U.S.C. § 2000d-7, for example, specifically abrogated the states' Eleventh Amendment immunity for claims brought under the Civil Rights Act of 1964, 42 U.S.C. § 2000d. This is the only claim Plaintiffs brought against CDE that is potentially viable as a matter of law.

United States District Court
Northern District of California

1    cannot bring common law claims against CDE, the negligence claim against CDE must also be

2    DISMISSED WITHOUT LEAVE TO AMEND.

3                                    **b.    Individual Defendants**

4            Plaintiffs bring Count IX against all Defendants alleging violations of California Education

5    Code § 220.  *See* Compl. ¶ 181.  That provision prohibits "discrimination on the basis of . . . race

6    or ethnicity [or] religion . . . in any program or activity conducted by an ***educational institution***

7    that receives, or benefits from, state financial assistance."  Cal. Educ. Code § 220 (emphasis

8    added).  Under § 210.3, an "[e]ducational institution" is defined as a school or any administrating

9    agency for public elementary or secondary schools.  Cal. Educ. Code § 210.3.  In short, an

10    individual cannot be an educational institution and therefore cannot be held liable under § 220.

11    *Donovan v. Poway Unified Sch. Dist.,* 167 Cal. App. 4th 567, 584 n.3 (2008).  Accordingly, Count

12    IX against the individual Defendants is DISMISSED WITHOUT LEAVE TO AMEND.

13    **IV.    CONCLUSION**

14            For the reasons stated above, Defendants' motions are GRANTED.  Plaintiffs may amend

15    the non-futile portions of their complaint consistent with the directives of this order.  Any

16    amended complaint is due within 21 days of this order.

17            **IT IS SO ORDERED.**

18    Dated: July 8, 2025

19                                                            _____

20                                                            Noël Wise
                                                              United States District Judge
21

22

23

24

25

26

27

28

United States District Court
Northern District of California

V.    APPENDIX

| Count | Cause of Action | UPA | UPA Ind. Defs | CDE | SSPI | Dewan | Bonduris | SCCOE/ SCCBOE |
|-------|-----------------|-----|---------------|-----|------|-------|----------|----------------|
| 1 | 42 U.S.C. § 1981<br>Freedom To Contract | x | x | | | | | |
| 2 | 42 U.S.C. § 1983<br>Equal Protection Clause | x | x | | x | x | x | |
| 3 | Cal. Const. Art. I, § 7(a)<br>Equal Protection Clause | x | x | | x | x | x | |
| 4 | 42 U.S.C. § 1983<br>Freedom of Speech | x | x | | | x | x | |
| 5 | Cal. Const. Art. I, § 2(a)<br>Freedom of Speech | x | x | | | x | x | |
| 6 | 42 U.S.C. § 1983<br>Free Exercise Clause | x | x | | | x | x | |
| 7 | Cal. Const. Art. I, § 4<br>Free Exercise Clause | x | x | | | x | x | |
| 8 | 42 U.S.C. § 2000d *et. seq.*<br>Civil Rights Act of 1964, Title VI | x | | x | | | | x |
| 9 | Cal. Educ. Code § 220<br>Prohibition of Discrimination | x | x | x | x | x | x | x |
| 10 | Cal. Gov. Code § 11135<br>Prohibition of Discrimination | x | x | x | x | x | x | x |
| 11 | Cal. Civil Code § 51<br>Unruh Civil Rights Act | x | x | | x | x | x | |
| 12 | Cal. Civil Code § 51.7<br>Ralph Civil Rights Act of 1976 | x | x | | x | x | x | |
| 13 | Cal. Civil Code § 52.1<br>Tom Bane Civil Rights Act | x | x | x | x | x | x | x |
| 14 | Cal. Bus. and Prof. Code § 17200<br>Unfair Competition | x | x | | | | | |
| 15 | Breach of Contract | x | | | | | | |
| 16 | Negligence/Negligent Infliction of Emotional Distress | x | x | x | x | x | x | x |