UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| E.M., et al.,<br><br>            Plaintiffs,<br><br>     v.<br><br>CALIFORNIA DEPARTMENT OF EDUCATION, et al.,<br><br>            Defendants. | Case No. 24-cv-07397-NW<br><br>**ORDER GRANTING MOTIONS TO DISMISS**<br><br>Re: ECF Nos. 61, 64, 66, 87 |

Before the Court are motions to dismiss Plaintiffs' first amended complaint ("FAC"), ECF No. 57,[1] filed by University Preparatory Academy ("UPA"), David Porter, Rachel Juliano, Alisha Hill, and Lucas Kelleher ("UPA Individual Defendants") (collectively "the UPA Defendants"), ECF No. 66; the California Department of Education ("CDE") and State Superintendent of Public Instruction Tony Thurmond in his individual capacity (collectively "the State Defendants"), ECF No. 61; current Santa Clara County superintendent Jessica Bonduris, Santa Clara County Office of Education ("SCCOE") and Santa Clara County Board of Education ("SCCBOE") (collectively "the Santa Clara Defendants"), ECF No. 64; and former Santa Clara County superintendent Dr. Mary Ann Dewan, ECF No. 87.

Having duly considered the parties' written submissions, the Court GRANTS Defendants' motions and DISMISSES the FAC with partial leave to amend.

---

[1] Plaintiffs filed a first amended complaint on July 23, 2025, captioned "Am. Complaint." ECF No. 56. Later the same day Plaintiffs filed a correct first amended complaint, captioned "Corr. Am. Complaint." ECF No. 57. The latter, operative complaint is what the Court references as the FAC in this Order.

## I. BACKGROUND

E.M. and her parents ("Parent Plaintiffs") (collectively "Plaintiffs") filed suit on October 23, 2024, alleging sixteen causes of action against different combinations of Defendants. In their 55-page original complaint, Plaintiffs alleged that following the October 7, 2023 Hamas terrorist attack on Israel, E.M.'s classmates harassed her for being openly Jewish. On July 7, 2025, the Court dismissed the complaint in its entirety with partial leave to amend. *See* ECF No. 54. Plaintiffs now assert twelve causes of action in a FAC that has expanded to 95 pages. The factual allegations in Plaintiffs' FAC are substantively identical to those alleged in the original complaint, *see* ECF No. 60 (redline between the original complaint and the FAC).

E.M. withdrew from UPA before the spring semester began in January 2024. In that approximately eight- to ten-week period between the first alleged incident of harassment on October 9, 2023, and E.M.'s last day of school before the holidays in December 2023, Plaintiffs alleged six discrete acts of bullying perpetrated against E.M., and five discrete meetings with various school administrators concerning how the school should respond to those incidents. Those specific incidents and meetings are provided chronologically below, with the bullying incidents underlined to best demonstrate when and how the school administration became involved as the bullying continued.

- <u>On October 9, E.M.'s history teacher forced her to read a passage about past peaceful relations between Palestinians and Jews, which was humiliating for her, even though E.M. was visibly upset and asked to be excused to "get control of herself." FAC ¶ 36.</u>

- <u>On October 10, two classmates confronted E.M., accusing Jews of being terrorists and claiming her family lived on stolen land. *Id.* ¶ 38. Later that week, those same girls showed E.M. a threatening Instagram post and spread rumors that "White E.M.'s family are terrorists." *Id.* ¶ 40.</u>

- On October 13, E.M.'s mother, Elisa, met with UPA's Dean of Student Services, Dr. Alisha Hill, about the bullying. *Id.* ¶ 41. Hill assured Elisa she would raise the issue with UPA Executive Director David Porter and "fix this." *Id.*

- <u>On October 16, two different classmates began chasing E.M. around the school when they heard her speaking Hebrew on a phone call while yelling "[w]e want you to die." *Id.* ¶ 42.</u>

- <u>On October 18, E.M.'s two classmates accused E.M. of being a terrorist. *Id.* ¶ 44.</u>

2

- On October 24, E.M. and her parents met with Director Porter. *Id.* ¶ 45. At that meeting, E.M. explained the recent bullying directly to Porter. *Id.* ¶ 46.

- <u>On November 13, some of E.M.'s classmates refused to call her by name and instead began addressing her simply as "Jew." *Id.* ¶ 48.</u>

- On November 14, E.M. and her mother met in person with Rachel Juliano, the seventh-grade counselor. *Id.* ¶ 49. E.M. again explained her recent bullying experience. *Id.* Elisa and Juliano exchanged emails the following day. *Id.* ¶ 50.

- On November 28, E.M. and her parents had a virtual meeting with Juliano, Hill, and Director of Student Services, Lucas Kelleher. *Id.* ¶ 51

- <u>On December 5, E.M.'s two Muslim classmates learned that someone had "snitched" on them and indicated they would injure whoever that person was. *Id.* ¶ 53.</u>

- On December 21, Elisa had another virtual meeting with Juliano, Hill, and Kelleher. *Id.* ¶ 55.

## II.  LEGAL STANDARD

To survive a motion to dismiss, a complaint must minimally contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and "a demand for the relief sought." Fed. R. Civ. P. 8. The complaint must clearly establish the claims and parties such that a defendant would have "no difficulty in responding to the claims with an answer and/or with a Rule 12(b)(6) motion to dismiss." *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1131–32 (9th Cir. 2008).

Federal Rule of Civil Procedure 12(b)(6) is designed to "test[ ] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When analyzing a complaint under Rule 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009), and therefore are insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010).

### III. DISCUSSION

Though the Court would usually turn to Plaintiffs' complaint to structure its order on a motion to dismiss, portions of the operative complaint are, in fact, no longer operative. Since filing the FAC, Plaintiffs have withdrawn, dismissed, or asked the Court to ignore various causes of action. Specifically, Plaintiffs have:

- Dismissed Counts II and III as brought against Thurmond after the State Defendants filed their motion to dismiss. *See* ECF No. 72; ECF No. 68, Pls' Opp'n to State Defs' Mot. at 2 ("Upon reviewing the CDE motion, Plaintiffs believe that they should not be pursuing some of these claims . . .").

- Conceded that Counts VI and VII in their entirety were alleged in error and "should be ignored or dismissed." *See* ECF No. 69, Pls' Opp'n to UPA Mot. at 2 n.3 & 7 n.8 (explaining that Plaintiffs' sixth and seventh causes of action are "completely duplicative" of Plaintiffs' fourth and fifth causes of action respectively).

- Withdrawn their claim under Cal. Educ. Code § 220 (Count IX) against CDE after acknowledging that the Court had previously dismissed that claim against CDE with prejudice. ECF No. 68, Pls' Opp'n to State Defs' Mot. at 2.

- Conceded that "they cannot state [state law causes of action] against the County at this time," despite having brought claims under Cal. Educ. Code § 220 (Count IX) and for negligence (Count XII) against the SCCOE and SCCBOE. ECF No. 71, Pls' Opp'n to Santa Clara Defs' Mot. at 8.

Though clarifying the operative claims is unquestionably Plaintiffs' responsibility, the Court has (as it did in the Order granting Defendants' first motion to dismiss) attempted to identify Plaintiffs' active claims and the Defendants associated with those claims, in the table appended to this Order. The table reflects findings the Court makes within this Order.

### A. Parent Plaintiffs Do Not Allege a Constitutional Deprivation or Other Cognizable Injury

Like the original complaint, the FAC failed to properly allege that E.M.'s parents had standing to sue any of the Defendants. Nevertheless, except for Counts VIII (Title VI) and IX

4

(Cal. Educ. Code § 220), Parent Plaintiffs brought all remaining counts alleged in the FAC alongside E.M. As an initial matter, the Court already found that negligence claims based on parental injury (Count XII) are precluded as a matter of law. ECF No. 54 at 5. Furthermore, Parent Plaintiffs have not alleged any cognizable injury under § 1983 because they have not alleged that Defendants deprived them of ***their*** constitutional rights. *Burrow v. Postville Cmty. Sch. Dist.*, 929 F. Supp. 1193, 1208 (N.D. Iowa 1996) (holding that parents could not bring a § 1983 action against the school based on their own claims of emotional distress); *Morgan v. City of New York*, 166 F. Supp. 2d 817, 819 (S.D.N.Y. 2001) (holding that a mother lacked standing to bring individual claims under § 1983 based on a deprivation of [her child's] constitutional rights). Parent Plaintiffs have alleged that they have suffered emotional distress, causing them to seek therapy and pay for alternate schooling for E.M. These are not constitutional deprivations, and they do not give rise to § 1983 claims.

Accordingly, Counts I through VII as brought by the Parent Plaintiffs are dismissed. Furthermore, because the Court has already provided Parent Plaintiffs the opportunity to amend their claims without success, Parent Plaintiffs' claims are DISMISSED WITH PREJUDICE.

**B.     Counts III and V Are Not Causes of Action**

Plaintiffs attempted to bring Count III and V directly under the California Constitution, but California law does not recognize a cause of action for monetary damages for freestanding violations of the state Constitution. *See Wigfall v. City and Cnty. of San Francisco*, No. 06–4968–VRW, 2007 WL 1744344, at *4 (N.D. Cal. 2007); *Javor v. Taggart*, 98 Cal.App. 4th 795 (2002) ("It is beyond question that a plaintiff is not entitled to damages for a violation of the due process clause or the equal protection clause of the state Constitution."). Therefore, Plaintiffs' Counts III (Cal. Const., Art. I, § 7) and V (Cal. Const., Art. I, § 2) fail as a matter of law. *Katzberg v. Regents of Univ. of Cal.*, 29 Cal.4th 300, 303 (2002) (no private right of action under the due process and equal protection clauses of California Constitution, Art. I, § 7(a)); *Cuviello v. City & Cnty. of San Francisco*, 940 F. Supp. 2d 1071, 1101 (N.D. Cal. 2013) (providing a *Katzberg* analysis on the availability of damages under California Constitution, Art. I, § 2). Further, because the FAC appears to request only monetary damages under Counts III and V, Plaintiffs

5

cannot amend their allegations to remedy this issue. *See* FAC ¶¶ 209, 247 (alleging damages "in an amount to be determined at trial").[2] The Court therefore GRANTS WITH PREJUDICE Defendants' motion to dismiss Count III and V.

### C. E.M. Fails to State a Claim on Any Federal Count as to the UPA Defendants.

Plaintiffs brought four federal claims against the UPA Defendants: three claims under 42 U.S.C. § 1983 (Counts I,[3] II, and IV) and a fourth claim under Title VI of the Civil Rights Act (42 U.S.C. § 2000d) (Count VIII).

#### 1. Counts I, II and IV: E.M. Fails to State a Claim Under 42 U.S.C. § 1983

##### a. Section 1983 Overview

Section 1983 "is a mechanism for vindicating federal statutory or constitutional rights." *Stilwell v. City of Williams*, 831 F.3d 1234, 1240 (9th Cir. 2016) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). The statute provides that "[e]very person who, under color of [State law] subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. In practice, a

---

[2] Though the FAC requests "declaratory and injunctive relief" as appropriate, the only reference to that relief within the body of the FAC is Plaintiffs' comment that a judicial declaration that UPA failed "to recognize and accept responsibility for violating the law . . . would significantly help E.M. recover her trust in public education and authority in general." FAC ¶¶ 401, 464. Declaratory judgments, however, are not available on those grounds. Mere "psychic satisfaction [through judicial declaration] is not an acceptable Article III remedy because it does not redress a cognizable Article III injury." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998). E.M.'s actionable injuries, if any, lay in the deprivation of her rights to equal protection while a student at UPA, an injury that "lies wholly in the past without a reasonable likelihood of recurring in the future." *Tarhuni v. Holder*, 8 F. Supp. 3d 1253, 1267–68 (D. Or. 2014) (citing *Leu v. Int'l Boundary Comm'n*, 605 F.3d 693, 694 (9th Cir. 2010)). In contrast, E.M.'s distrust for authority is not a cognizable Article III injury. *Profant v. Have Trunk Will Travel*, CV 11–05339–RGK OPX, 2011 WL 6034370 at * 5 (C.D.Cal. Nov. 29, 2011) ("Plaintiffs allege that they will face future harm by not being able to trust Defendants . . . . This future harm is conjectural and too speculative to satisfy the standing requirements to seek injunctive and declaratory relief in federal court.").

[3] Count I alleges that UPA violated 42 U.S.C. § 1981. Because § 1981 does not provide for an implied cause of action against state actors, the Court's analysis presumes that Plaintiffs meant to raise a § 1983 claim based on Defendants' alleged violation of § 1981. *See Yoshikawa v. Seguirant*, 74 F.4th 1042 (9th Cir. 2023) (en banc) (holding that a plaintiff seeking to enforce substantive rights under § 1981 must bring his claim under § 1983).

6

plaintiff must allege four elements: "(1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). "Under § 1983, a defendant can only be held liable for his own individual actions." *Walsh v. Tehachapi Unified Sch. Dist.*, 827 F.Supp.2d 1107, 1116 (E.D. Cal. 2011)

### b. State Action

According to the UPA Defendants, Plaintiff have not sufficiently alleged that the school and its employees acted under color of state law. Where, as here, there is no dispute that UPA "is operated not by the State but by an outside entity," FAC ¶ 10, the Court must begin "with the presumption that private conduct does not constitute governmental action." *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999). The state-action element in § 1983 "excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal quotation marks omitted). Further, because the "provision of educational services is not a function that is traditionally and exclusively the prerogative of the state," UPA's status as a provider of public education "is not a basis for holding that [defendant charter school] acted under color of state law." *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 816 (9th Cir. 2010).

Plaintiffs' response is insufficient and limited to a single paragraph in their opposition. Plaintiffs do correctly note that "[w]hether a private party engaged in state action is a highly factual question." *Brunette v. Humane Soc'y of Ventura Cnty.*, 294 F.3d 1205, 1209 (9th Cir. 2002), *as amended on denial of reh'g and reh'g en banc* (Aug. 23, 2002). Nevertheless, Plaintiffs fail to allege ***any*** facts that demonstrate that UPA is a state actor for purposes of a § 1983 claim. *See* Pls' Opp'n to UPA Mot. at 2 (noting only that UPA provided educational services without explaining how those services rendered UPA a state actor). Allegations that UPA had a contractual relationship with the school district, that it received state and federal funds, and that it was subject to state regulation are insufficient to satisfy the requirement of pleading that UPA is a state actor. *See Rendell–Baker v. Kohn*, 457 U.S. 830, 840–42 (1982); *Morse v. North Coast Opportunities, Inc.*, 118 F.3d 1338, 1341 (9th Cir. 1997).

7

For this reason alone, the UPA Defendants' motion to dismiss is GRANTED.  If Plaintiffs intend to amend their complaint consistent with this order, they must allege specific facts showing that "the conduct allegedly causing the deprivation of a federal right [was] fairly attributable to the State."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).  Plaintiffs may do so by demonstrating that the UPA Defendants' conduct satisfied one of the four tests set forth by the Supreme Court "for determining whether a private [party's] actions amount to state action: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test."  *Franklin v. Fox*, 312 F.3d 423, 444–45 (9th Cir. 2002); *see e.g., Lee v. Katz*, 276 F.3d 550, 554–55 (9th Cir. 2002) ("public function" test); *Crowe v. County of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010) ("joint action" test); *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 836–41 (9th Cir. 1999) ("governmental compulsion" test); *Villegas v. Gilroy Garlic Festival Assoc.*, 541 F.3d 950, 955 (9th Cir. 2008) ("nexus" test).

### c. Count I: 42 U.S.C. § 1981 (Freedom to Contract), and Count XI (Breach of Contract)

The FAC's first cause of action alleges that UPA violated 42 U.S.C. § 1981.  "Section 1981 prohibits discrimination in the making and enforcement of contracts by reason of race, including color or national origin differences."  *Flores v. City of Westminster*, 873 F.3d 739, 752 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 1551 (2018).  The statute "offers relief when . . . racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship."  *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006).  The existence of a contractual relationship is an essential element of a § 1981 claim.  *Id.*  Plaintiffs argue that they meet this element by alleging that the registration form and Student-Family Handbook were contracts.  Plaintiffs are incorrect.

Courts that have considered the issue have found that there is no express or implied contract between public secondary schools and their students as a result of a student handbook.  *See Sanders v. Myers*, No. 24-CV-00132-PAB-KAS, 2025 WL 947532, at *5 (D. Colo. Mar. 28, 2025) (collecting cases).  The Ninth Circuit affirmed a dismissal on these grounds in *T.L. ex rel. Lowry v. Sherwood Charter School*.  No. 03:13-CV-01562-HZ, 2014 WL 897123, at *13 (D. Or.

8

Mar. 6, 2014), *aff'd sub nom. Lowry v. Sherwood Charter Sch.*, 691 F. App'x 310 (9th Cir. 2017). The district court there explained that "a contractual relationship is not found in the relationship between a public school and its students given the involuntary nature of attendance and the absence of consideration." *Id.*

Plaintiffs' arguments to the contrary rely on cases involving private institutions where students pay tuition. Pls' Opp'n to UPA Mot. at 3 (citing *Zumbrun v. University of Southern California*, 25 Cal.App.3d 1, 10 (1972) *and Kashmiri v. Regents of University of California*, 156 Cal.App.4th 809, 829 (2007)). In that context, the contractual consideration "may be the tuition in exchange for education," but a State has a duty to provide secondary education to its children. *See, e.g.*, *Doe v. Town of N. Andover*, No. 1:20-CV-10310-IT, 2023 WL 3481494, at *14 (D. Mass. May 16, 2023) ("Because the Town has a statutory duty to provide a public education, a handbook between a school and its students lacks the consideration necessary for an enforceable contract."). Plaintiffs do not allege that they ever paid tuition to UPA, precluding the consideration necessary for a contract.

Accordingly, the UPA Defendants' motion to dismiss Count I is GRANTED WITH PREJUDICE. This reasoning applies with equal force to Plaintiffs' breach of contract claim (Count XI). As a result, though the Court has otherwise deferred considering Plaintiffs' state law claims, the Court DISMISSES WITH PREJUDICE Count XI.

### d. Count II: Equal Protection

To succeed on a § 1983 equal protection claim, a plaintiff must show that a defendant, acting under color of state law, "acted in a discriminatory manner and that the discrimination was intentional." *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 740 (9th Cir. 2000) (citation omitted). A plaintiff may allege discriminatory intent by claiming that a defendant either "intentionally discriminated" or that the defendant "acted with deliberate indifference" by "'respond[ing] to known peer harassment in a manner that is . . . clearly unreasonable.'" *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1135 (9th Cir. 2003) (quoting *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 649 (1999)).

"Deliberate indifference" is a "fairly high standard," *Karasek v. Regents of Univ. of California*, 956 F.3d 1093, 1105 (9th Cir. 2020, one that requires more than just a "negligent, lazy, or careless" response, *Oden v. N. Marianas Coll.*, 440 F.3d 1085, 1089 (9th Cir. 2006). To "meet this high standard there must, in essence, be an official decision not to remedy the violation and this decision must be clearly unreasonable." *Doe v. Willits Unified School Dist.*, 473 Fed. Appx. at 775–76; *see also Garcia v. Clovis Unified School Dist.,* 627 F.Supp.2d 1187, 1196–97 (E.D. Cal. 2009) (holding that a school is not deliberately indifferent simply because the response did not remedy the harassment or because the school did not utilize a particular discipline); *Doe v. Benecia Unified School Dist.,* 206 F.Supp.2d 1048, 1056 (E.D. Cal. 2002) (holding that ineffective or mistaken responses do not constitute deliberate indifference). While a delayed response can constitute "deliberate indifference if it prejudices the plaintiff or if the delay was a deliberate attempt to sabotage the plaintiff's complaint or its orderly resolution," *Karasek*, 956 F.3d at 1106 (simplified), delay itself is not enough to demonstrate deliberate indifference. *See Oden*, 440 F.3d at 1089 (holding an investigation process that took "several months" was not deliberately indifferent because the school provided remedial measures in the interim).

Plaintiffs have not sufficiently alleged that the UPA Defendants acted with deliberate indifference. In *Flores*, the Ninth Circuit found sufficient evidence of deliberate indifference (1) in the defendants' failures to follow up or investigate incidents of violence; (2) in their failure to take further action when the administrator knew that the already-implemented remedial measures were inadequate; and (3) in their failure "to take any steps to investigate and stop the harassment." 324 F.3d at 1135-36. In the instant case, Plaintiffs do not allege that the UPA Defendants failed to follow up or investigate specific incidents of bullying, nor do they allege that administrators did not attempt to implement some sort of remedial measures, or that they failed to take any steps to stop future harassment. At best, Plaintiffs allege only that the harassment continued, but are otherwise silent as to any action the UPA Defendants did or did not take. *See* FAC ¶¶ 47, 52. If Plaintiffs have reason to believe that the UPA Defendants failed to act on the information they received during their various meetings with Plaintiffs, they must allege so affirmatively. It is not enough that the bullying did not abate. *Davis*, 526 U.S. at 648 (emphasizing that the deliberate

indifference standard "does not mean that recipients can avoid liability only by purging their schools of actionable peer harassment or that administrators must engage in particular disciplinary action."). A "school is not deliberately indifferent simply because the response did not remedy the harassment or because the school did not utilize a particular discipline." *Garcia ex rel. Marin v. Clovis Unified Sch. Dist.*, 627 F. Supp. 2d 1187, 1196 (E.D. Cal. 2009)

The Court is skeptical that Plaintiffs can remedy this issue given the limited time UPA had to react to E.M.'s bullying. *See P.B. by & Through T.B. v. Thorp Sch. Dist.*, No. 1:20-CV-03032-SAB, 2021 WL 6275114, at *11 (E.D. Wash. Mar. 29, 2021) (finding no deliberate indifference where student withdrew "before any steps could be taken to remedy their concerns and before any meeting between all concerned parties were held."). The alleged deprivation of E.M.'s rights began on October 9, 2023, with the last alleged event occurring on December 5, 2023, a period of about eight to ten weeks. For at least four of those weeks, the bullying appeared to stop. *See* FAC ¶¶ 44-48 (no bullying alleged between October 18, 2023, and November 14, 2023). In *Flores*, plaintiffs alleged deprivations that spanned 1991-1998, a period of seven ***years***. The length of the alleged deprivation is not necessarily dispositive; the caselaw demonstrates that whether a school responds in a manner that is "clearly unreasonable" depends on the knowledge available to the school, the length of time the school was on notice, and the severity of the peer harassment. Nevertheless, the brief period of harassment described in the FAC makes it more difficult for E.M. to allege that any of the UPA Defendants acted with deliberate indifference. Because the Court cannot say that E.M. will be unable to make such a showing if granted leave to amend, the UPA Defendants' motion to dismiss Count II is GRANTED WITH LEAVE TO AMEND.

    **e. Count IV: Freedom of Speech**

Plaintiffs failed to sufficiently allege that E.M.'s rights to free speech were impinged by UPA. Plaintiffs did not allege that Defendants attempted to silence E.M. or compelled her to take a specific stance. The Court is therefore left to assume, then, that Plaintiffs attempted to allege that UPA retaliated against E.M. by failing to take her complaints seriously on the basis of her self-identification "as Israeli-American, Jewish, and a Zionist, and because she spoke Hebrew to

11

friends and family while on campus." FAC ¶ 217; *see also* Pls. Opp'n to UPA Mot. at 4 (specifically mentioning retaliation).

To recover under § 1983 for such retaliation in violation of the First Amendment, a plaintiff must allege and prove: (1) she engaged in constitutionally protected activity; (2) as a result, she was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action. *See Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006). An adverse action is an act that likely would have dissuaded a person from making a complaint. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Plaintiffs failed to allege that the conduct of the school or any of its employees dissuaded E.M. from making complaints; if anything, as the bullying progressed, E.M. and her parents' complaints increased. Additionally, there is nothing beyond conclusory allegations to indicate that UPA treated E.M. with alleged deliberate indifference ***because*** of anything E.M. said or the way she self-identified.

The UPA Defendants' motion to dismiss Count I is GRANTED WITH PREJUDICE.

### 2. Count VIII: 42 U.S.C. § 2000d, Title VI

Title VI of the Civil Rights Act of 1964 provides: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000(d). "When a [school] district is 'deliberately indifferent' to its students' right to a learning environment free of racial hostility and discrimination, it is liable for damages under Title VI." *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1034 (9th Cir. 1998); *see also Bryant v. Indep. Sch. Dist. No. 1-38 of Garvin Cty.*, 334 F.3d 928, 934 (10th Cir. 2003).

The Court applies the same deliberate indifference standard here as addressed in Count II (Equal Protection) above. For the same reasons articulated there, the Court GRANTS Defendants' motions to dismiss Count VIII WITH LEAVE TO AMEND.

**D. E.M. Fails to State a Claim on Any Count as to the Non-UPA Defendants.**

Plaintiffs only brought a subset of their twelve claims against the non-UPA Defendants, and only two of those claims allege violations of federal law: Counts II (§ 1983) and VIII (Title VI).

Plaintiffs have not remedied the fatal issue that the Court noted in its original order. Plaintiffs again fail to demonstrate that any of the non-UPA Defendants knew of the alleged harassment that E.M. was facing before she withdrew from UPA, "precluding any possibility that [the non-UPA Defendants] caused the deprivation of rights that prompted [E.M.] to leave UPA." ECF No. 54. At best, Plaintiffs allege "on information and belief," for example, that "Thurmond was not just aware of the dangers faced by Jewish students but flooded by concerns expressed by their parents (if not the students themselves)." FAC ¶ 115. Even assuming this is sufficient to demonstrate that Thurmond had knowledge of E.M.'s harassment before she left UPA (it is not), it still does not demonstrate that Thurmond (or any other non-UPA Defendant) ***caused*** Plaintiffs injury.

Further, deliberate indifference requires E.M. to allege that the school responded "to ***known*** peer harassment in a manner that is . . . clearly unreasonable." *Flores*, 324 F.3d at 1135 (emphasis added); *see also Davis*, 526 U.S. at 648 (deliberate indifference occurs "only where the [school's] response to the harassment or lack thereof is clearly unreasonable in light of the ***known*** circumstances.") (emphasis added). Nowhere in the FAC did Plaintiffs allege facts showing that any non-UPA Defendant (*i.e.*, Dewan, Bonduris, Thurmond, SCCOE, SCCBOE, or CDE) were made aware of any of the instances of purported harassment, or that they refused to act ***in response to*** such harassment. *See M.M. v. San Juan Unified Sch. Dist.*, No. 219-CV-00398-TLN-EFB, 2020 WL 5702265, at *11 (E.D. Cal. Sept. 24, 2020).

Accordingly, Defendants' motions to dismiss all counts brought against Dewan, the State Defendants, and the Santa Clara Defendants are GRANTED WITH PREJUDICE.

**E. State Law Claims**

Plaintiffs' remaining claims arise under state law. A district court "may decline to exercise supplemental jurisdiction" if it has "dismissed all claims over which it has original jurisdiction."

13

28 U.S.C. § 1367(c)(3). At this time, the Court declines to exercise its supplemental jurisdiction over the state law claims. Unless stated otherwise, *see supra* n.**Error! Bookmark not defined.**, the Court dismisses E.M.'s state law claims without prejudice to inclusion in an amended complaint.

## IV.    CONCLUSION

For the reasons stated above, Defendants' motions are GRANTED. Specifically:

- All claims against the State Defendants, the Santa Clara Defendants, and Dewan are DISMISSED WITH PREJUDICE;
- All claims brought by Parent Plaintiffs are DISMISSED WITH PREJUDICE;
- Counts I, III, V-VII, and XI as brought by E.M. are DISMISSED WITH PREJUDICE;
- Counts II, VIII, IX, X, and XII as brought by E.M. are DISMISSED WITH LEAVE TO AMEND.

If E.M. elects to file an amended complaint, Plaintiff must:

- Refer to the pleading as Plaintiff's "Second Amended Complaint" in the caption;
- Comply with Federal Rule of Civil Procedure 8, which requires "a short and plain statement" of each claim, and a pleading that is "concise and direct"; and
- File the Second Amended Complaint within 21 days of this order.

**IT IS SO ORDERED.**

Dated: November 12, 2025

Noël Wise
United States District Judge

## V. APPENDIX

Except for Counts VIII and IX, all claims were brought by all three Plaintiffs; E.M. alone brings Counts VIII and IX. As discussed *supra* § III.A, all claims brought by Parent Plaintiffs are DISMISSED WITH PREJUDICE, regardless E.M.'s ability to bring those same claims.

| | **Cause of Action** | **UPA** | **UPA Ind. Defs** | **CDE** | **Thurmond** | **Dewan / Bonduris** | **SCCOE/ SCCBOE** |
|---|---|---|---|---|---|---|---|
| 1 | 42 U.S.C. § 1981 Freedom To Contract | *Dismissed with Prejudice* | | | | | |
| 2 | 42 U.S.C. § 1983 Equal Protection Clause | *Dismissed with Leave* | *Dismissed with Leave* | | *Dismissed with Prejudice*[†] | *Dismissed with Prejudice* | *Dismissed with Prejudice* |
| 3 | Cal. Const. Art. I, § 7(a) Equal Protection Clause | *Dismissed with Prejudice* | *Dismissed with Prejudice* | | *Dismissed with Prejudice*[†] | *Dismissed with Prejudice* | *Dismissed with Prejudice* |
| 4 | 42 U.S.C. § 1983 Freedom of Speech | *Dismissed with Prejudice* | *Dismissed with Prejudice* | | | | |
| 5 | Cal. Const. Art. I, § 2(a) Freedom of Speech | *Dismissed with Prejudice* | *Dismissed with Prejudice* | | | | |
| 6 | *DUPLICATE CLAIM*[†] *ALLEGED IN ERROR* | | | | | | |
| 7 | *DUPLICATE CLAIM*[†] *ALLEGED IN ERROR* | | | | | | |
| 8 | 42 U.S.C. § 2000d *et. seq.* Civil Rights Act of 1964, Title VI | *Dismissed with Leave* | | *Dismissed with Prejudice* | | | *Dismissed with Prejudice* |
| 9 | Cal. Educ. Code § 220 Prohibition of Discrimination | *Dismissed with Leave* | | *Dismissed with Prejudice*[†] | | | *Dismissed with Prejudice*[†] |
| 10 | Cal. Bus. and Prof. Code § 17200 Unfair Competition | *Dismissed with Leave* | *Dismissed with Leave*[*] | | | | |
| 11 | Breach of Contract | *Dismissed with Prejudice* | | | | | |
| 12 | Negligence/Negligent Infliction of Emotional Distress | *Dismissed with Leave* | *Dismissed with Leave* | | *Dismissed with Prejudice* | *Dismissed with Prejudice* | *Dismissed with Prejudice*[†] |

[*] Plaintiffs brought Count X against UPA Executive Director David Porter only (and not against any other UPA Individual Defendant).

[†] Plaintiffs requested that the Court ignore and/or dismiss these claims. *See supra* § III.

15