United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

E.M., et al.,

         Plaintiffs,

      v.

CALIFORNIA DEPARTMENT OF
EDUCATION, et al.,

         Defendants.

Case No. 24-cv-07397-NW

**ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS**

Re: ECF No. 96

Plaintiff, a former student at University Preparatory Academy ("UPA"), brings this action against the school and several of its administrators—David Porter, Rachel Juliano, Alisha Hill, and Lucas Kelleher (collectively, "Defendants"). The current operative pleading is the second amended complaint ("SAC") filed on December 3, 2025. ECF No. 94. Defendants timely moved to dismiss on December 17, 2025. For the reasons set forth below the Court GRANTS Defendants' motion with partial leave to amend.

## I.     BACKGROUND[1]

As the Court has recounted in previous Orders, Plaintiff was a seventh grader at UPA on October 7, 2023, the day terrorist organization Hamas attacked Israel, killing thousands and inciting open war.[2] In the wake of the attack and Israel's armed response, some of E.M.'s classmates began bullying her because she identified as Jewish, Israeli, and Zionist. E.M.'s tormentors considered her "responsibl[e] for ongoing violence against Palestinians in Gaza." SAC

---

[1] All facts are taken from the SAC.

[2] *See* July 8, 2025 Order, ECF No. 54; November 11, 2025 Order, ECF No. 92.

¶ 56.  In the period between the attack and her last day of school in December 2023, E.M. was the subject of six discrete acts of bullying.  *See* Order, ECF No. 92 at 2.  Interspersed with these incidents, E.M. and her parents met with school administrators at least five separate times to discuss how the school should respond to those incidents.  *Id*.

The factual allegations in the SAC mostly mirror the previous amended complaint but for some targeted additions.  *See* Redline, ECF No. 104.  For the purposes of this Order, the Court notes that Plaintiff now additionally alleges:

- On "October 25th, the Directors of UPA sent out an email entitled 'UPA Statement on Gaza and Israel' advising the school community that the conflict in Gaza 'could affect our students, families, staff, and community in various ways' and stating that 'UPA stands against anti-Semitism and islamophobia.'"  SAC ¶ 48.  The Statement did not reference the existence of antisemitic conduct at the school.  *Id.* ¶ 50

- As the bullying continued through December, "on information and belief, Plaintiff alleges the school did nothing about either Plaintiff's harassment or attitudes toward antisemitism generally."  *Id.* ¶ 72; *see also id.* ¶ 76 ("Plaintiff and her mother learned . . . that nothing at all had been done" to address E.M.'s bullying and/or antisemitism within the school.).

- At some point during the semester, UPA and the Individual Defendants asked the two "ringleaders" of Plaintiff's bullying to "be respectful of such religious and/or cultural difference in their communications with fellow students in the aftermath of October 7."  *Id.* ¶ 91.

- "On information and belief, Plaintiff is informed and alleges [1] that neither girl nor her parents were warned about severe consequences for continued harassing behavior, including expulsion . . . [2] that no other student was admonished about spreading denigrating information about Jews and/or Israelis . . . [3] that no student was admonished about calling Plaintiff 'Jew' . . . [and] [4] that UPA took no action to educate faculty or staff, much less the student body, about how to properly address the question of the conflict in the Middle East and how to make sure that harassment and discrimination did not take place."  *Id.* ¶¶ 92-95.

- "UPA and the Individual Defendants knew full well that without communicating a meaningful threat of expulsion," or otherwise explaining that any bulling would be met with severe consequences, "its efforts were likely to not just fail but make matters worse."  *Id.* ¶ 97.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) is designed to "test[ ] the legal sufficiency of a claim."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either (1) the lack of a cognizable legal theory, or (2) insufficient facts to support a cognizable legal claim.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d

2

696, 699 (9th Cir. 1990).  When analyzing a complaint under Rule 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  Legal conclusions couched as factual allegations are not entitled to the assumption of truth.  *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). Similarly, conclusory legal allegations are insufficient to defeat a motion to dismiss for failure to state a claim.  *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010).

## III.   DISCUSSION

The SAC pleads two federal causes of action: a violation of 42 U.S.C. § 1983 and a violation of 42 U.S.C. § 2000d *et. seq.*, Title VI of the Civil Rights Act of 1964.  The Court takes each in turn.

### A.   Section 1983

"To establish a § 1983 equal protection violation, the plaintiffs must show that the defendants, [1] acting under color of state law, [2] discriminated against them as [3] members of an identifiable class and [4] that the discrimination was intentional." *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1134 (9th Cir. 2003).  As the Court set forth in its previous Order:

> Where, as here, there is no dispute that UPA "is operated not by the State but by an outside entity," FAC ¶ 10, the Court must begin "with the presumption that private conduct does not constitute governmental action." *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999).  The state-action element in § 1983 "excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal quotation marks omitted).  Further, because the "provision of educational services is not a function that is traditionally and exclusively the prerogative of the state," UPA's status as a provider of public education "is not a basis for holding that [defendant charter school] acted under color of state law." *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 816 (9th Cir. 2010).

ECF No. 92 at 7.

Notwithstanding the precepts above, a § 1983 action can lie against a private entity when the private entity is a willful participant in joint action with the State or its agents. *See Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003).  While "there is no specific formula for defining state action," *Howerton v. Gabica*, 708 F.2d 380, 383 (9th Cir. 1983), the key "inquiry is always

3

whether the defendant has exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 748 (9th Cir. 2020) (internal quotation marks and citation omitted). The Ninth Circuit has "recognize[d] at least four different criteria, or tests, used to identify state action," and here Plaintiff invokes two: (1) the government compulsion or coercion test and (2) the governmental nexus test. *Id.*

**Government Compulsion Test.** Government compulsion exists "[w]hen the State has commanded a particular result" and "removed that decision from the sphere of private choice." *Peterson v. City of Greenville*, 373 U.S. 244, 248 (1963). For a private party's conduct to constitute state action under a compulsion theory, it must involve "such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). Plaintiffs must point to a "state regulation or custom having the force of law that compelled, coerced, or encouraged" the alleged private conduct. *Johnson v. Knowles*, 113 F.3d 1114, 1120 (9th Cir. 1997).

Plaintiff has not made such a showing. As Plaintiff herself notes, California law forbids discrimination in educational settings such as charter schools. *See* Opp. at 2 (discussing California's longstanding commitment to antidiscrimination legislation); Cal. Educ. Code § 220 (prohibiting various forms of discrimination "in any program or activity conducted by an educational institution that receives, or benefits from, state financial assistance."). In fact, Plaintiff expressly alleges that UPA discriminated against her *in spite of* California's antidiscrimination laws, not at the direction of the state. *See* SAC ¶¶ 161-190 (alleging Defendants violated § 220). As a result, the state certainly did not compel UPA's allegedly discriminatory conduct.

**Governmental Nexus Test.** The governmental nexus test "asks whether there is such a close nexus between the State and the challenged action that the seemingly private behavior may be fairly treated as that of the State itself." *Kirtley*, 326 F.3d at 1094-95 (internal quotation marks and citation omitted). "Generally, the governmental nexus test requires evidence that the private actor is entwined with governmental policies, or the government is entwined in the private actor's

management or control." *Webber v. First Student, Inc.*, 928 F. Supp. 2d 1244, 1260 (D. Or. 2013) (cleaned up).

According to Plaintiff, UPA's promise to adhere to California's prohibition on discrimination as set forth in the school's petition for reauthorization "is sufficient to establish the 'nexus' that the discriminatory conduct taken in contradiction thereto is action taken by UPA as a state actor." Opp. at 5. Plaintiff is wrong. The Ninth Circuit has explicitly held that "receipt of federal and state funds conditioned on compliance with anti-discrimination laws is insufficient to convert private conduct into state action." *Heineke v. Santa Clara Univ.*, 965 F.3d 1009, 1014 (9th Cir. 2020). Plaintiff also argues that the "contradiction" between California's "broad anti-discrimination mandate" and UPA's discriminatory conduct demonstrates the existence of a "nexus." That contention is facially illogical; any actions taken by UPA in "contradiction" to California's laws cannot be so entwined with government policy "that the action of the latter may be fairly treated as that of the State itself." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974). Accordingly, Plaintiff's reference to the nexus test cannot save her § 1983 claim.

As this is Plaintiff's third attempt to plead a § 1983 claim, the Court GRANTS Defendants' motion and dismisses the § 1983 claim with prejudice.

### B.    Title VI

A school that is "'deliberately indifferent' to its students' right to a learning environment free of racial hostility and discrimination . . . is liable for damages under Title VI." *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1034 (9th Cir. 1998) (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998)). As this Court previously noted:

> "Deliberate indifference" is a "fairly high standard," *Karasek v. Regents of Univ. of California*, 956 F.3d 1093, 1105 (9th Cir. 2020), one that requires more than just a "negligent, lazy, or careless" response, *Oden v. N. Marianas Coll.*, 440 F.3d 1085, 1089 (9th Cir. 2006). To "meet this high standard there must, in essence, be an official decision not to remedy the violation and this decision must be clearly unreasonable." *Doe v. Willits Unified School Dist.*, 473 Fed. App'x. [775, 775-76 (9th Cir. 2012)].

ECF No. 94 at

After laying out the standard, the Court found that Plaintiff's first amended complaint ("FAC") failed to sufficiently allege that either UPA or its administrators acted with deliberate indifference in their response to E.M.'s complaints of bullying and discrimination.  The Court explained:

> Plaintiffs do not allege that the UPA Defendants failed to follow up or investigate specific incidents of bullying, nor do they allege that administrators did not attempt to implement some sort of remedial measures, or that they failed to take any steps to stop future harassment.  At best, Plaintiffs allege only that the harassment continued, but are otherwise silent as to any action the UPA Defendants did or did not take.  *See* FAC ¶¶ 47, 52.

ECF No. 94 at

The new allegations in the SAC appear to be aimed at remedying the issues described above.  The issue now, however, is that the SAC includes allegations that cannot simultaneously be true.  For example, Plaintiff for the first time recounts that UPA (1) issued a statement on October 25, 2023 directly responding to the conflict in Gaza and condemning antisemitism and islamophobia and (2) talked with at least two of E.M.'s bullies about their behavior.  SAC ¶¶ 50, 91.  The Court cannot square these facts with the repeated refrain that Defendants "did nothing" when confronted with information about the bullying.  *See, e.g.*, SAC ¶ 47 ("[N]either UPA nor Porter nor any of the Individual Defendants did act – either [on October 24th], or before Plaintiff's mother had to pull Plaintiff from the school.").  Plaintiff may believe that the school's actions were so insufficient that they amounted to deliberate indifference, but she must address that the school acted in the first place.

What's more, Plaintiff must confront the cases cited in the Court's previous Order that declined to find deliberate indifference merely because the bullying failed to stop or the plaintiffs disagreed with the administration's actions.  *See* Order, ECF No. 92 at 10-11; *Garcia ex rel. Marin v. Clovis Unified Sch. Dist.*, 627 F. Supp. 2d 1187, 1196 (E.D. Cal. 2009) (explaining a "school is not deliberately indifferent simply because the response did not remedy the harassment or because the school did not utilize a particular discipline").  As *Garcia* instructs, UPA and its administrators are not deliberately indifferent merely because E.M.'s bullying continued and

6

because the school did not employ the specific disciplinary or mitigation actions that E.M. preferred. *See Garcia*, 627 F. Supp. 2d at 1196.

Provided Plaintiff can explain how UPA and its administrators acted with deliberate indifference *notwithstanding* the actions otherwise taken by Defendants (as acknowledged and alleged by Plaintiff), over the short interval during which the bullying occurred, Plaintiff may be able to allege deliberate indifference. For this reason, the Court GRANTS Defendants' motion to dismiss Plaintiff's Title VI claim, but GRANTS Plaintiff leave to amend this claim.

### C.    Individual Defendants

Plaintiff does very little to differentiate the four individual defendants in this action. At the outset, Plaintiff summarily states that each individual defendant "was directly involved in observing or hearing about the facts referenced [in the SAC] and failing to respond, whether at all or sufficiently, to these facts." SAC ¶ 13. But "[a]n individual defendant is not liable on a civil rights claim unless the facts establish that particular defendant's personal involvement in some constitutional deprivation or a causal connection between that defendant's wrongful conduct and the constitutional deprivation the plaintiff alleged." *Gates v. Jackson*, No. CV 14-904 DDP(JC), 2014 WL 12851952, at *5 (C.D. Cal. Aug. 7, 2014). Plaintiff's reference to various actions each of the Individual Defendants *could* have taken is not sufficient. SAC ¶¶ 111-114. Because deliberate indifference occurs "only where the [school's] response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances," Plaintiff must explain why the specific individual actions taken by each Individual Defendant were "clearly unreasonable." *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999).

\* \* \*

As it did before, because the Court has dismissed the federal causes of action, it may decline to exercise its supplemental jurisdiction over the state law claims. It again elects to do so at this juncture.[3]

---

[3] The Court notes, however, that a cursory review of Plaintiff's state law claims reveals fatal deficiencies that Plaintiff should consider amending in any future complaint. For example, if Plaintiff intends to bring a claim under § 17200, she must allege an underlying business practice.

United States District Court
Northern District of California

7

United States District Court
Northern District of California

## IV.    CONCLUSION

For the reasons stated above, Defendants' motions are GRANTED.  Specifically:

- Plaintiff's 42 U.S.C. § 1983 claim is DISMISSED WITH PREJUDICE;
- Plaintiff's 42 U.S.C. § 2000d (Title VI) claim is DISMISSED WITH LEAVE TO AMEND.

If E.M. elects to file an amended complaint, Plaintiff must:

- Renumber the remaining claims consecutively (*i.e.*, Count I, Count II, etc.) and state explicitly against which Defendant(s) each claim is brought;
- Refrain from bringing any new claims;
- Allege facts demonstrating that each Individual Defendant is independently liable on the relevant claims as a result of their individual actions;
- Ensure the complaint does not include internally contradictory allegations;
- File the Third Amended Complaint within 21 days of this order.

**IT IS SO ORDERED.**

Dated: April 2, 2026

Noël Wise
United States District Judge

---

Cal. Bus. & Prof. Code §§ 17200 (requiring a plaintiff to allege an act of unfair competition, which includes "any unlawful, unfair or fraudulent business act or practice.").

8